Michael Jamie FUNDILLER and Rae Winder Fundiller, his wife, Plaintiffs-Appellants,

v.

The CITY OF COOPER CITY, a municipal corp., et al., Defendants-Appellees.

No. 84–5104.

United States Court of Appeals, Eleventh Circuit.

Dec. 11, 1985.

Bailey & Dawes, Robbie M. Barr, Guy B. Bailey, Jr., Miami, Fla., for plaintiffs-appellants.

**1438**

E. Bruce Johnson, Michael T. Burke, Fleming, O'Bryan & Fleming, Christine M. Carsky, Ft. Lauderdale, Fla., for defendants-appellees.

Before HILL, KRAVITCH and SMITH [*], Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant Michael Fundiller, while engaging in a narcotics transaction, was shot by a policeman. To recover for his injuries, Fundiller filed an action under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 18 U.S.C. § 246, and state tort law, against the City of Cooper City, its Mayor, an official of the City's Police Department, and eleven uniformed police officers. The district court dismissed all of appellant's federal causes of action for failure to state a claim; there being no remaining federal question, the court dismissed the state tort claims as well. We reverse.

## I. BACKGROUND

On April 29, 1981, Fundiller and two companions drove to a parking lot in Cooper City, Florida, to complete a prearranged sale of cocaine to Robert Guarnaccia, a Cooper City policeman who was posing as a cocaine purchaser. After arriving at the lot, Fundiller, the driver of the vehicle, stopped the car alongside the car occupied by Guarnaccia. Someone in Fundiller's car passed a package to Guarnaccia. While he examined the package, Guarnaccia used a wire transmitter to advise several other policemen stationed nearby that the transaction was taking place. Without identifying himself as a policeman, Guarnaccia then ordered Fundiller and his companions not to touch their guns. Suddenly, and without provocation or warning, Guarnaccia began firing his weapon at Fundiller, striking him five times. After being hit at least once, Fundiller reached beneath his car's front seat and grasped a gun

which he fired twice without hitting anyone. Cooper City Police Officers F. DiVincenzo, John Walters, R. Begamini, Chris Wagoner, Clyde Hill, J.M. Tezzas, Gerald Ward, Dave Baxley, Norman Price, and M. Buschman, all of whom were stationed nearby, moved into the parking lot. These officers dragged Fundiller from the car and handcuffed him, exacerbating one of his wounds.

Fundiller and his wife commenced this lawsuit against Guarnaccia, the ten other officers involved in the incident, Cooper City Public Safety Director John Pozar, Cooper City Mayor Schaeffer, and the City of Cooper City. Count one of the complaint was brought under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 18 U.S.C. § 246, and alleged that the individual defendants, excluding Mayor Schaeffer, denied and conspired to deny plaintiff his right to due process under the fifth and fourteenth amendments. Count two, using the same jurisdictional basis, charged that it was the custom or policy of the City to negligently hire, train, and supervise its police officers. In count three, plaintiff charged the City, Mayor Schaeffer, and Pozar with common law negligence, and count four alleged that the police officers' actions amounted to an assault and battery. Count five was a derivative claim brought by Fundiller's wife against all defendants for loss of consortium. The defendants moved to dismiss the complaint. Initially, the court below denied the motions to dismiss while ruling on a series of preliminary motions. The court subsequently, sua sponte, dismissed the entire complaint for lack of subject matter jurisdiction. The court noted the similarity of this case to *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), observing that *Rizzo* would mandate dismissal of the claims against the City, Mayor Schaeffer and Pozar, "absent an allegation of direct responsibility for the improper conduct." *Fundiller v. City of Cooper City*, 578 F.Supp. 303, 304 (S.D.Fla. 1984). The court declined to analyze this matter thoroughly, however, holding in-

[*] Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

stead that plaintiff's due process claim was barred by *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The court observed that the action of the arresting officers was "the type of activity that [has] traditionally been redressed by state tort law." *Fundiller v. City of Cooper City,* 578 F.Supp. 303, 305 (S.D.Fla. 1984). Turning to the remaining claims, the court held that plaintiff failed to allege a cause of action under 42 U.S.C. § 1985, and that there was no implied private right of action under 18 U.S.C. § 242, the criminal counterpart to section 1983. There being no basis for federal jurisdiction, the court dismissed the pendent state tort claims as well. Plaintiff appeals only from the court's dismissal of his section 1983 claims.

## II. LIABILITY OF INDIVIDUAL OFFICERS

### A. *Officer Guarnaccia*

The court below dismissed plaintiff's 1983 claims for failure to state a claim upon which relief could be granted. For the purposes of reviewing this motion to dismiss, the material allegations of the complaint are taken as true. *See Walker Process Equip. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965). The complaint is to be liberally construed in favor of the plaintiff. *See* Fed.R.Civ.P. 8(f); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This standard mandates that we reverse the dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–02.

Both sides devote significant portions of their briefs to the question whether Florida tort remedies provided all the "process"

that was due Fundiller in this instance. Appellees apparently concede that Fundiller has satisfied the other elements of a valid due process claim under 42 U.S.C. § 1983.[1] In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that a random and unauthorized negligent deprivation of property by a state employee does not amount to a due process violation cognizable under section 1983, if the state provides a meaningful post-deprivation remedy. 451 U.S. at 543–44, 101 S.Ct. at 1916–17. Mindful of converting the Fourteenth Amendment into "a font of tort law to be superimposed upon whatever systems may already be administered by the States," 451 U.S. at 544, 101 S.Ct. at 1917 (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)), the Court relegated a prisoner's efforts to seek compensation for the loss of his $23.50 hobby kit to a tort suit in state court. The Court applied *Parratt's* rationale to an intentional deprivation of property in *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

In our recent decision of *Gilmere v. City of Atlanta,* 774 F.2d 1495 (11th Cir.1985) (*en banc* ), this court held that the scope of *Parratt* is necessarily limited by both section 1983's legislative history and Supreme Court decisions. *Gilmere,* 774 F.2d at 1499. Citing Justice Blackmun's concurrence in *Parratt,* the *Gilmere* court held that substantive due process claims challenging "governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process," 451 U.S. at 545, 101 S.Ct. at 1917 (citations omitted), may be asserted in federal court regardless of the existence of a state tort remedy designed to compensate for the conduct.[2] 774 F.2d at 1500.

---

1. Appellees do not contend that the individual officers were not acting under color of state law at the time of the deprivation. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

2. Justice Blackmun recently addressed "the need to confine the *Parratt* rule lest it swallow the remedy it was designed only to limit." Blackmun, *Section 1983 and Federal Protection of Individual Rights—Will the Statute Remain*

Unlike procedural due process claims, which challenge the adequacy of the procedures used by the government in deciding how to treat individuals, substantive due process claims allege that certain governmental conduct would remain unjustified even if it were accompanied by the most stringent of procedural safeguards. Such substantive claims are outside the scope of *Parratt* because the constitutional violation is complete at the moment when the harm occurs. The existence of state postdeprivation remedies therefore has no bearing on whether the plaintiff has a constitutional claim.

*Gilmere*, 774 F.2d at 1500.

■ This Circuit follows the Fifth Circuit's lead in finding a substantive due process violation where "rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action." *Casines v. Murchek*, 766 F.2d 1494, 1502 (11th Cir.1985) (quoting *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir.1984) (footnote omitted)). Defining the exact scope of a substantive due process claim is by its nature an imprecise task. The due process clause, however, has been recognized consistently as a constraint on the government's ability to use force. Writing for the Court in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), Justice Frankfurter concluded that substantive due process is violated when the government engages in actions that "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." 342 U.S. at 169, 72 S.Ct. at 208 (quoting *Malinski v. New York*, 324 U.S. 401, 416–17, 65 S.Ct. 781, 788–89, 89 L.Ed. 1029 (1945)). The *Gilmere* court was guided by the Second Circuit's decision in *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.1973), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). In *Johnson*, the court delineated several useful factors for determining whether substantive limitations on governmental force have been exceeded: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; and (4) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. 481 F.2d at 1033.

Applying the *Johnson* factors to the facts as found by the district court in *Gilmere*, we concluded that two police officers were liable for beating an individual when the beating occurred "with little or no provocation" and the blows "were not delivered in a good faith effort to control [the individual] but rather out of irritation at his initial resistance. . . ." *Gilmere*, 774 F.2d at 1501. We also relied on substantive due process grounds to affirm a judgment holding one of the policemen liable for a shooting death

---

*Alive or Fade Away?*, 60 N.Y.U.L.Rev. 1, 24 (1985).

Other circuits that have considered the scope of *Parratt* have reached varying conclusions. In *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (*en banc*), the Sixth Circuit found that *Parratt* barred an action for the negligent deprivation of a liberty interest where state remedies were available. The Sixth Circuit reasoned that *Parratt's* application is governed by a state's inability to foresee wrongful actions rather than the nature of the deprivation. The Fourth Circuit views *Parratt* as confined to property deprivations, but has held, nonetheless, that § 1983 suits for negligent deprivations of liberty are barred where there are adequate state remedies. *Daniels v. Williams*, 748 F.2d 229, 231–32 (4th Cir.1984) (*en banc*), *cert. granted*, — U.S. —, 105 S.Ct. 1168, 84 L.Ed.2d 320 (1985). The Ninth Circuit, however, takes an opposite view.

In *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985) (*en banc*), the Ninth Circuit found that *Parratt* did not bar a suit challenging an intentional deprivation of a liberty interest. The Ninth Circuit's inquiry focused on the importance of the interest at stake and whether the deprivation had been random. The court declined to draw a bright line distinction between deprivations of property and liberty.

The Second Circuit has adopted a slightly different mode of analysis. In *Coughlin v. Patterson*, 761 F.2d 886 (2d Cir.1985), the court noted that the denial of due process was a discrete injury from the deprivation of liberty. There, a prisoner who had been denied a proper disciplinary hearing had a claim under § 1983. The *Coughlin* court found that deprivation of liberty was authorized by the state even though the deprivation of due process had been random.

where the officer's momentary belief that his life was in danger was solely attributable to his fear of retaliation for his own unjustified physical abuse. *Id.* at 1501.

Turning to the present case, the complaint alleges that Officer Guarnaccia drew his weapon during the drug transaction without identifying himself as a police officer and instructed appellant and his companions not to move. It is alleged that Guarnaccia began firing shortly after drawing his weapon. Only after being hit at least once did Fundiller reach beneath the car seat where his weapon was concealed. The two shots he fired, it is contended, were in self-defense.

■ Based upon the *Johnson* factors, we conclude that Fundiller has stated a substantive due process violation claim. Drawing all reasonable inferences in the light most favorable to the appellant, we find that Fundiller has alleged that Guarnaccia used unnecessary and unreasonable deadly force. Although Fundiller admits that he was engaged in a narcotics transaction at the time of the shooting, the need to apprehend Fundiller and his companions, under the circumstances as alleged, would not justify Guarnaccia's conduct. Accordingly, we hold that the district court's decision that *Parratt* required dismissal of Guarnaccia as a defendant was erroneous.[3]

## B. *Liability of Other Officers*

■ Application of non-lethal force in effectuating an arrest can, in certain instances, rise to the level of a substantive due process claim. *Gilmere*, 774 F.2d at 1501;

*Shillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981).[4] To determine whether appellant has stated a claim for relief against the other officers, we must apply the *Johnson* factors to their conduct.

The complaint alleges that the other individual police officers arrived on the scene just after the shooting. Instead of rendering aid, the officers dragged appellant from his car and, leaving him face down on the ground, shackled his hands behind him. Several officers stated that they hoped appellant would bleed to death and shouted obscenities at him while he lay on the ground moaning in pain. The complaint does not name which officers were responsible for what conduct.

■ Although the question is close, we conclude that appellant's allegations sufficiently state a claim that these police officers used excessive force. We are not convinced that under no circumstances could appellant prevail on this issue. Construing the allegations in a light most favorable to appellant, the actions of the officers who dragged appellant from the car and handcuffed him can be viewed as deliberate acts of punishment, rather than a reasonable means of restraining an arrestee. Despite the complaint's failure to identify which officers in particular were responsible for these actions, we do not believe that any of the individual officers are entitled to dismissal at this stage. It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983.

---

**3.** *Parratt's* rationale also is inapplicable to § 1983 suits that claim a deprivation of an enumerated constitutional right. *Parratt*, 451 U.S. at 536, 101 S.Ct. at 1913. A contention that application of force in arresting an individual was unreasonable can be cognizable under the fourth amendment, which requires that "seizures" be reasonable. *Tennessee v. Garner*, —— U.S. ——, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); *see also Acoff v. Abston*, 762 F.2d 1543, 1548–49 (11th Cir.1985) (applying *Garner* retroactively). In the court below, appellant never attempted to characterize his claim as one under the fourth amendment; he stated only that the rights appellees deprived him of were secured by the fourteenth amendment. Of

course, it is through the due process clause of the fourteenth amendment that the fourth amendment's constraints have been made applicable to the states. *Wolf v. Colorado*, 338 U.S. 25, 28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949). Our holding that Fundiller's substantive due process claim is beyond the scope of *Parratt,* obviates the need for a lengthy discussion of the viability of any fourth amendment claim.

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance. *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972); *see also Wright v. City of Ozark*, 715 F.2d 1513, 1516 (11th Cir.1983) (citing *Byrd* as an example of "a special relationship" necessary to impose liability on police for negligently or recklessly facilitating criminal action of third party). *Cf. Harris v. Chanclor*, 537 F.2d 203,. 206 (5th Cir.1976) (deliberate indifference to inmate's severe and obvious injuries is tantamount to an intentional infliction of cruel and unusual punishment). Accordingly, we reverse the grant of dismissal in favor of the other officers who were allegedly present.

### III. MUNICIPAL LIABILITY

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that although municipalities can be sued under section 1983, liability must be predicated upon more than a theory of respondeat superior. It held, however, that liability may be predicated upon a showing that a government employee's unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Regardless whether the basis of the claim is an officially promulgated policy or an unofficially adopted custom, it must be the "moving force behind the constitutional deprivation before liability may attach." *City of Oklahoma City v. Tuttle,* — U.S. ——, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1985) (plurality opinion) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)).

Thus, not only must there be some degree of "fault" on the part of the municipality in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation. *Tuttle*, 105 S.Ct. at 2435–36.

The Supreme Court has defined the term "custom" to include "persistent and wide-spread ... practices," "permanent and well settled" practices, and "deeply embedded traditional ways of carrying out policy." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970). Although not necessarily adopted by a person or body with rulemaking authority, customs can become so settled and permanent as to have the force of law. *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36. To have this effect, the custom must be "created" by those whose "edicts or acts may fairly be said to represent official policy." *Id.* at 694, 98 S.Ct. at 2037; *see Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th Cir. 1983).

The allegations contained in appellant's complaint charged that the City adopted a custom by acting with gross indifference to the conduct engaged in by its police officers, including repeated failures to follow police procedure, unnecessary use of excessive force, roughness and shootings at the time of making arrests, intimidation during arrests and booking procedures, and drug trafficking. Appellant also alleges that the City failed to investigate the backgrounds of its police applicants before hiring them, and that the City failed to adequately train its officers. It is contended that Mayor Schaeffer and Public Safety Director Pozar, who are responsible for such matters, were aware of the course of conduct engaged in by the department's officers, and of the inadequate training and investigation, and failed to take any corrective steps. Finally, the complaint alleges that execution of this policy resulted in the deprivation of appellant's constitutional rights.

Although it may be questionable whether an alleged policy of inadequate

training or negligent hiring will suffice to impose liability on a municipality for the unconstitutional actions of its police officers, *Tuttle,* 105 S.Ct. at 2436 & n. 7, n. 8 (plurality opinion), given the allegations of this complaint, the district court inappropriately dismissed the City as a party defendant. The complaint states that the City of Cooper City has a custom of allowing the use of excessive force. If established, this allegation provides the requisite fault on the part of the City, as a persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a "custom" within the meaning of *Monell. Batista v. Rodriquez,* 702 F.2d 393, 397 (2d Cir.1983). In addition, Fundiller's allegation would provide the causal link between the challenged conduct and the City's policy, because Officer Guarnaccia would have been acting in accordance with the policy of allowing or encouraging excessive force. *See Acoff v. Abston,* 762 F.2d 1543, 1548 (11th Cir.1985). Hence we reverse the grant of the motion to dismiss in favor of the City.

## IV. SUPERVISORY LIABILITY

Like municipalities, supervisors cannot be held liable for the acts of employees solely on the basis of respondeat superior. *McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir.1981), *cert. denied,* 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Supervisory liability is not limited, however, to those incidents in which the supervisor personally partici-

pates in the deprivation. *Goodson v. City of Atlanta,* 763 F.2d 1381, 1389 (11th Cir. 1985); *Wilson v. Attaway,* 757 F.2d 1227, 1241 (11th Cir.1985); *Sims v. Adams,* 537 F.2d 829, 831 (5th Cir.1976). There must be a causal connection between the actions of the supervisory official and the alleged deprivation. *Wilson,* 757 F.2d at 1241; *Henzel v. Gerstein,* 608 F.2d 654, 658 (5th Cir.1979). This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action. *Wilson,* 757 F.2d at 1241; *Sims,* 537 F.2d at 832.

A review of the pertinent standards leads us to conclude that the complaint states a claim against Cooper City Public Safety Director Pozar.[5] Appellant alleges that Pozar is responsible for disciplining police officers and setting police department policy, and that Cooper City police officers have engaged in a pattern of excessive force in effectuating arrests. Fundiller further alleges that Pozar failed to take corrective steps although he was aware of police use of unlawful, excessive force. Accordingly, we hold that dismissal of the complaint against Pozar was inappropriate.

## V. CONCLUSION

We REVERSE the decision of the court below and REMAND for further proceedings. Because the pendent state law tort claims were dismissed only because of the

---

5. The complaint does not attempt to hold Mayor Schaeffer liable under § 1983. Thus Mayor Schaeffer continues as a pendent party in this litigation by virtue of the tort claims alleged in Counts III and V of Fundiller's complaint. Implicit in the traditional concept of pendent jurisdiction is that the court already has jurisdiction over all the parties involved because they are either diverse or a substantial federal question has been asserted against the defendant. *Williams v. Bennett,* 689 F.2d 1370, 1379 (11th Cir.1982) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). Here, Mayor Schaeffer is not a diverse party and, unlike the

other defendants, no federal claim has been asserted against him. Under the theory of pendent party jurisdiction "a court in some limited circumstances may bring in 'state' parties over which it could not otherwise exercise jurisdiction." *Williams,* 689 F.2d at 1379 (citing *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976)). "The exercise of pendent [party] jurisdiction is a discretionary decision reserved to the district court." *Williams,* 689 F.2d at 1379. On remand the district court may wish to consider whether the ends of justice and the interests of judicial economy will best be served by Mayor Schaeffer's continued presence in this lawsuit.

absence of a federal question, we direct that Counts III, IV and V be reinstated.