Lauren **MILITELLO,**
Plaintiff/Appellee,

v.

**SHERIFF OF the BROWARD SHERIFF'S OFFICE, Deputy Delia Daly-England, in her individual capacity, and Deputy Tiffannie Fann, in her individual capacity, Defendants,**

**Deputy Rufino Morel, Jr., in his individual capacity, and Deputy Danny Polk, in his individual capacity, Defendants/Appellants.**

No. 16-10548

United States Court of Appeals,
Eleventh Circuit.

(April 5, 2017)

Matthew W. Dietz, Disability Independence Group, Miami, FL, Candace Diane Cronan, Allison B. Duffie, Joshua Michael Entin, Joseph E. Somake, Entin & Della Fera, P.A., Fort Lauderdale, FL, for Plaintiff-Appellee

Michael R. Piper, Christopher J. Stearns, Johnson Anselmo Murdoch Burke Piper & Hochman, PA, Fort Lauderdale, FL, Daniel Lee Losey, Kelley Kronenberg Gilmartin Fichtel Wander Bamdas Eskalyo & Dunbrack, PA, Fort Lauderdale, FL, for Defendants-Appellants

Michael R. Piper, Christopher J. Stearns, Johnson Anselmo Murdoch Burke Piper & Hochman, PA, Fort Lauderdale, FL, for Defendant Scott Isreal

Daniel Lee Losey, Kelley Kronenberg Gilmartin Fichtel Wander Bamdas Eskalyo & Dunbrack, PA, Fort Lauderdale, FL, Michael R. Piper, Johnson Anselmo Murdoch Burke Piper & Hochman, PA, Fort Lauderdale, FL, for Defendants Delia Daly-England, Tiffannie Fann

Before JORDAN and JILL PRYOR, Circuit Judges, and PROCTOR,[*] District Judge.

PROCTOR, District Judge:

This case arises out of an alleged assault on Lauren Militello. She claims she was attacked by Broward County Deputy Sheriff Delia Daly-England. She also claims that three other deputy sheriffs violated her Fourth Amendment rights by not intervening. Two of those deputy sheriffs, Rufino Morel, Jr., and Danny Polk, have taken this interlocutory appeal because the district court denied their qualified immunity summary judgment motions. Morel and Polk argue, at least in part, that the district court erred by denying their motions because Militello failed to show that either of them had violated clearly established law. After reviewing the record, and with the benefit of oral argument, we agree. Therefore, we reverse the district court's denial of summary judgment as to these two deputies and remand with instructions to grant their motion based on qualified immunity.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff Militello's complaint asserted claims against the Sheriff of the Broward County Sheriff's Office and four deputy sheriffs. Militello raised three claims under 42 U.S.C. § 1983 against Defendant Deputy Sheriff Delia Daly-England for unlawful imprisonment and arrest, use of excessive force, and malicious prosecution, along with several related state-law claims. In contrast, Militello only presented one Section 1983 claim against Deputy Sheriffs Tiffannie Fann, Morel, and Polk: failure to intervene. According to Militello, Deputies Fann, Morel, and Polk violated her constitutional rights by failing to intervene in Deputy Daly-England's unconstitutional acts.

Deputies Morel and Polk moved for summary judgment on the ground that they were entitled to qualified immunity because they were not in a position to intervene and prevent Deputy Daly-England's conduct.[1] The district court orally denied their motion for summary judgment and later clarified its denial of summary judgment in a short endorsed order.

### B.  Summary of Relevant Facts [2]

On May 25, 2012, Plaintiff Militello was detained by the Broward County Drug

---

[*] Honorable R. David Proctor, United States District Judge for the Northern District of Alabama, sitting by designation.

1. Defense counsel did not move for summary judgment on behalf of Deputies Fann and Daly-England. He informed the district court during a motion hearing that he lacked a good-faith basis to argue for summary judgment on their behalf.

2. These are the "facts" gleaned from the parties' submissions for summary judgment purposes. All reasonable doubts about the facts have been resolved in Militello's favor. *See*

Court after she admitted to taking benzodiazepines, a violation of her probation. On the date of the incident, Deputy Morel was assigned to the Broward County Courthouse. Deputy Morel stood watch over Militello outside of a courtroom while she changed into a jail uniform and then escorted her to the Broward County Jail. When Deputy Morel and Militello reached the jail's sally port, Militello sat down due to pain in her legs.

Deputy Daly-England directed Militello to stand up. When Militello asked Daly-England to help her up, Daly-England ordered her again to get up (with an added expletive). Militello, replying in kind, stated that she could not get up. Thereafter, Deputies Morel and Polk grabbed Militello by her shoulders and lifted her from the floor. Once Militello was standing in the sally port, Deputy Daly-England reportedly said to her, "I will do more than help you get up." Militello asserts that Deputies Morel and Polk were present when Deputy Daly-England made this statement to her.[3]

Other deputies, including Deputy Daly-England and another defendant named in the court below, Deputy Sheriff Tiffannie Fann,[4] escorted Militello from the sally port to the jail's booking area. When Deputy Daly-England and the other deputies led Militello out of the sally port, Deputies Morel and Polk lost visual contact with Militello.[5] Deputies Morel and Polk remained in the sally port while Militello was moved into the booking area.[6] It is in the booking area—where Morel and Polk were not present and which was outside the sight of Morel and Polk—that Militello claims Daly-England pushed her to the ground and dragged her into a search room. Once inside the search room, Militello alleges that Daly-England punched her three times in the face. It is unclear how much time elapsed between Daly-England's statement and Daly-England's use of force.

The district court received and viewed a video of the incident between Daly-England and Militello. Militello's counsel stipulated during the motion hearing that neither Deputy Morel nor Deputy Polk were visible in that video. And, again, the undisputed evidence is that they only escorted Militello to the sally port and then transferred custody of her to Daly-England, Fann, and other law enforcement officials. After watching the video, the district court found that Daly-England's use of force was excessive.

The district court denied Deputies Morel and Polk summary judgment after finding there was an issue of material fact: whether Deputies Morel and Polk had overheard Deputy Daly-England say to Militello that she (Daly-England) would "do more than help [Militello] get up." The district court

*Info. Sys. & Networks Corp. v. City of Atlanta,* 281 F.3d 1220, 1224 (11th Cir. 2002). They may not be the actual facts that could be established at a trial. *See Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1400 (11th Cir. 1994).

**3.** Deputies Morel and Polk did not inform the district court whether they overheard the statement.

**4.** Deputies Daly-England and Fann are not parties to this appeal.

**5.** Militello was unable to recall who was present at the locations where Deputy Daly-England pushed her and punched her. At a minimum, Militello presented no Rule 56 evidence from which the district court could have concluded that Deputies Morel and Polk were able to witness the events underlying the excessive-force claim against Deputy Daly-England.

**6.** Deputy Polk was assigned to the central intake and booking area of the Broward County Jail but continued to perform his duties in the sally port once Militello had been escorted out of that area.

interpreted this statement as a threat which indicated (or could have indicated) that Deputy Daly-England planned to commit an unlawful act. Thus, the district court concluded, if Deputies Morel and Polk overheard the statement, a jury could reasonably find that they had violated Militello's constitutional rights by not intervening to prevent the attack. According to the district court, if Deputy Daly-England made the statement to Militello that "I will do more than help you get up," that statement would be "sufficient to establish that Deputies Polk and Morel had reason to expect that excessive force would be used against Plaintiff." As we explain, the district court did not address certain facts that bear upon the issue of whether Deputies Morel and Polk violated Militello's clearly established rights.

## II. STANDARD OF REVIEW

"We review *de novo* whether the officers are entitled to immunity. Because the officers raised their defense[ ] in a motion for summary judgment, they should prevail if there is 'no genuine dispute as to any material fact' and they are entitled to immunity 'as a matter of law.'" *Black v. Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016) (internal citations omitted). When reviewing a denial of summary judgment, we consider the evidence in the light most favorable to a plaintiff and draw all reasonable inferences in his or her favor. *Id.*

## III. DISCUSSION

Polk and Morel contend that any action or inaction Militello ascribes to them did not violate Militello's clearly established constitutional rights. We agree.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). To rely upon qualified immunity, a defendant first must show that he or she acted within his or her discretionary authority. *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015). Here, no one disputes that Deputies Morel and Polk acted within their discretionary authority. Therefore, they may properly assert the defense and the question becomes whether it bars the claim against them.

To demonstrate that a defendant is not entitled to qualified immunity, a plaintiff must show (1) that the defendant violated his or her statutory or constitutional rights, and (2) "that 'the law clearly established those rights at the time of the alleged misconduct.'" *Id.* at 1352-53 (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013)). It is axiomatic that we have the sound discretion to determine which prong of qualified immunity should be analyzed first. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). In other words, we may choose in certain cases to go straight to the second element (bypassing the first) and analyze it. This is one of those cases.[7]

---

**7.** Consideration of the first prong of qualified immunity is unwarranted here as this case presents at least two of the circumstances identified in *Pearson*. First, Militello's failure-to-intervene claim presents a fact-bound Fourth Amendment issue for which a particularized analysis by our court would provide little precedential value. *Cf. Pearson*, 555 U.S. at 237, 129 S.Ct. 808. Second, we find that the second prong of qualified immunity presents a significantly easier question than the first prong. *Cf. id.* at 239, 129 S.Ct. 808 (noting the risk that courts may devote less care to deciding a constitutional question where

To determine whether a defendant violated an individual's clearly established rights, we must determine "whether the state of the law at the time of an incident provided fair warning" to the defendant that his or her conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. ——, ——, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (internal quotations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). When case law is needed to "clearly establish" the law applicable to the circumstances of a case, we look to decisions of the Supreme Court, our court, and the highest court of the apposite state. *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003); *see also Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1032-33 n. 10 (11th Cir. 2001) (*en banc*), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

We have held that an officer can be held liable under 42 U.S.C. § 1983 for failing to intervene when a fellow officer uses excessive force if he or she "is present at the scene" and "fails to take reasonable steps to protect the victim." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). "Therefore, an officer who is present at such a beating and fails to intervene may

be held liable though he administered no blow." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (*per curiam*). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000).

Militello has not pointed us to any case (nor have we ourselves found one) issued before May 2012 in which we held that an officer was in a position to intervene against the use of excessive force where he or she was unable to observe a fellow officer's use of force. For example, in *Riley v. Newton*, we reviewed whether a supervising officer was liable for failing to intervene in another officer's use of deadly force where both officers rode together on a patrol and pulled over a vehicle after a chase. 94 F.3d 632, 635 (11th Cir. 1996). The officer against whom the failure-to-intervene claim was raised had been arresting the vehicle's driver on the other side of the vehicle when the victim was shot. *Id.* In the *Riley* opinion, we reiterated the established law from *Fundiller* that an officer can be held liable for failing to intervene when he or she is present at the scene of another officer's use of excessive force and fails to take reasonable steps to protect the victim. *Id.* (quoting *Fundiller*, 777 F.2d at 1442). But we held that the defendant had *not* failed to take reasonable steps to protect the victim because: (1) he was engaged in an arrest on the other side of the vehicle; (2) he did not observe a use of excessive force by the officer who shot the victim; and (3) he "had no reason to expect the use of excessive force until after it had occurred." *Id.*

Militello's argument that we can find clearly established law here from case law

---

the second prong of qualified immunity presents an easy issue). We therefore do not address whether Morel and Polk violated Mili-

tello's Fourth Amendment rights by failing to intervene.

with analogous factual circumstances simply does not cut ice. Militello relies on *Riley* for the proposition that an officer must intervene if he or she has reason to believe that excessive force will be used by a fellow officer before an incident occurs.[8] But *Riley* does not go that far. In *Riley*, we analyzed the plaintiffs' failure-to-intervene claim as follows:

> Plaintiffs concede that Newton acted without any explicit direction from Glisson. But they argue (apparently for the first time on appeal) that Glisson was either idly standing by or failed to supervise Newton. This court has held that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. [1985] ). Plaintiffs have come forward with no facts from which a jury could find that Glisson failed to take reasonable steps to protect Lowe from excessive force. The undisputed facts establish that Glisson was engaged in making the arrest of Green while Newton, on his own, was dealing with Lowe. They were on opposite sides of the truck. When he saw Newton struggling with Lowe, Glisson observed no use of excessive force which might have given rise to a duty to intervene to stop it, nor did he have an indication of the prospective use of excessive force-none occurred until Newton's weapon fired. Because Glisson had no reason to expect the use of excessive force until after it had occurred, he had no reasonable opportunity to protect Lowe, and the obligation to take steps to protect him never arose. *See O'Neill v. Krzeminski*, 839 F.2d 9,

11-12 (2d Cir.1988) ("The three blows were struck in such rapid succession that Conners had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator.")

*Riley*, 94 F.3d at 635 (internal quotations and citations omitted). As this passage from *Riley* makes clear, that decision—notwithstanding the "reason to expect" language—simply does not involve similar particularized facts. *Cf. Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (holding that a plaintiff may present a clearly established constitutional violation if case law from an appropriate appellate court states that certain conduct is unconstitutional in certain circumstances).

Nor does our decision in *Priester* suggest a different result. There, we reversed a district court's grant of judgment as a matter of law to an officer who had witnessed another officer direct his dog to attack a non-resisting suspect. *See* 208 F.3d at 924-25. However, in that case, the victim had testified that the officer who had failed to intervene watched the incident from a distance and maintained "voice contact" with the other officer throughout the incident. *See id.* at 923-25. Additionally, the plaintiff indicated that the attack lasted for more than two minutes, which was enough time for the officer to intervene by ordering the other officer to restrain the dog. *Id.* at 925. Thus, we distinguished the *Priester* case "from those cases where an officer who failed to intervene was found not liable because he did not observe the violation or have the opportunity to intervene." *Id.* In *Priester*, we observed that "a police officer [has] a duty

---

8. Militello also cites two district court opinions for this proposition. Of course, a district court's opinion cannot create clearly established case law for purposes of qualified immunity. *See Snider*, 344 F.3d at 1328.

to intervene when he witnesse[s] the use of excessive force and ha[s] the ability to intervene." *Id.* at 927.

Here, we conclude that the district court erred by denying Deputies Morel and Polk qualified immunity. This is so because no existing law at the time of the alleged incident, May 2012, placed a reasonable officer on notice that he or she could violate an individual's Fourth Amendment rights by failing to intervene under the circumstances that Deputies Morel and Polk faced.

First, Daly-England's statement to Militello was not a direct threat of force. Reasonable officers would not necessarily have thought that Daly-England was going to assault Militello based solely on the words of her statement. And, the record does not present any other indicia of Daly-England's words being a clear threat.

Second, it is undisputed that Deputies Morel and Polk were not physically present in the booking area or interview room where Deputy Daly-England allegedly used excessive force against Militello. *Cf. Skrtich*, 280 F.3d at 1302 (finding that a failure-to-intervene claim can be raised against an officer who was present and failed to intervene in a use of excessive force); *see also Priester,* 208 F.3d at 927 (same); *Riley*, 94 F.3d at 635 (same); *Fundiller*, 777 F.2d at 1442 (same).

Third, in addition to not being physically present, Deputies Morel and Polk did not actually observe Deputy Daly-England's alleged physical attacks on Militello. *Cf. Riley*, 94 F.3d at 635 (concluding that under the circumstances, an officer could not take reasonable steps to prevent a fellow officer's use of deadly force when he did not witness the offending officer use excessive force). Here, it is undisputed that Militello claims she was attacked in the booking area, but neither Morel nor Polk were even in the booking area during the incident.

In sum, nothing in our prior precedent put Morel and Polk on notice that, under these circumstances, they were required to take any particular action that they failed to take after hearing Daly-England's statement. Nor did our precedent inform Morel and Polk precisely of what reasonable actions they should have taken to insulate themselves from liability under these facts. Because all of these factors distinguish this case from those where officers have been found liable for failing to intervene when excessive force was used, we hold that Deputies Morel and Polk did not violate clearly established law. Therefore, they are entitled to qualified immunity.

To conclude, we emphasize that we have only addressed whether Deputies Morel and Polk violated clearly established law. We need not (and do not) express any opinion as to whether Deputies Morel and Polk violated Militello's Fourth Amendment rights under the facts presented to the district court. *See Pearson*, 555 U.S. at 236, 129 S.Ct. 808.

## IV. CONCLUSION

For the reasons stated above, we reverse the district court's order denying Deputies Morel and Polk summary judgment. We remand this case with instructions to grant Deputies Morel and Polk summary judgment based on their qualified immunity defense to Militello's Section 1983 claim against them.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**