[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11446
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-24114-JEM

MICHAEL D. ARRINGTON,

Plaintiff-Appellant,

versus

MIAMI DADE COUNTY PUBLIC SCHOOL DISTRICT,
ALBERTO CARVALHO,
Superintendent and/or Director of Miami-Dade County
Public Schools District, individually and in his official capacity,
GEORGE T. BAKER AVIATION SCHOOL,
SEAN GALLAGAN,
Principal of George T. Baker Aviation School,
individually and in his official capacity,
GEORGE W. SANDS,
Assistant Principal, George T. Baker Aviation School,
individually and in his official capacity, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 4, 2020)

Before ROSENBAUM, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Michael D. Arrington filed a *pro se* civil-rights lawsuit under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, alleging that he was discriminated against due to his race (African-American) while enrolled as a student in the Avionic Technician Program at George T. Baker Aviation Technical College ("GTB"). After permitting Arrington to amend his complaint three times, the district court dismissed the lawsuit with prejudice, concluding that Arrington failed to state a plausible claim to relief. Arrington appeals. After careful review, we affirm.

**I.**

According to the operative third amended complaint (the "complaint"), Arrington, who is African-American, enrolled as a full-time evening student in the Avionic Technician Program at GTB, a public technical college in Miami-Dade County. Arrington's time at GTB was fraught with problems, which he largely attributes to his race.

2

The problems Arrington experienced at GTB, according to the complaint, included the following:  (a) a financial-aid officer withheld information from him about additional benefits for veterans; (b) his Pell Grant refund checks were inadequate or delayed—for instance, he claims he once received his refund check after other non-African-American students received their checks; (c) he was "deliberately" placed in the wrong course; (d) other non-African-American students used a different textbook than he did for the same course; (e) he was informed of a discrepancy regarding the number of class hours he had completed, and the school violated its own policy by not tracking his hours; (f) his keys were stolen from his backpack during a class break; (g) other students "deliberately distracted" him whenever he was trying to take a test and "shadowed" him when he went to the bathroom, and the principal refused to take action; and (h) and after he left GTB, the school failed to facilitate the transfer of his transcript to another college.

Based on these allegations, Arrington brought claims under § 1983, the Equal Protection Clause, and Title VI.  Arrington alleged that the individual defendants—Alberto Carvalho, a superintendent with the Miami-Dade County Public School District; and Pamela Johnson, an area supervisor for the School District and GTB—were liable as supervisors because they "established a policy or custom of deliberate indifference" depriving him of his federal rights, and because "the duration and frequency of [their] subordinates['] deprivation of [his] federal rights" meant that

3

they knew that he had been unlawfully discriminated against and failed to act.  For similar reasons, according to Arrington, the Miami-Dade County School Board was liable as well.  Arrington further claimed that "[t]here has been an intentionally discriminatory racially hostile environment" that was "sufficiently severe, pervasive and/or persistent so as to injure [him]."

The defendants filed motions to dismiss, which a magistrate judge recommended granting.  The magistrate judge reviewed Arrington's factual allegations and concluded that they failed to support a viable claim under any of the legal theories alleged or to connect any of the defendants' alleged actions to racial discrimination.  Over Arrington's objections, the district court adopted the magistrate judge's recommendation and dismissed the complaint with prejudice. Arrington now appeals.

## II.

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim.  *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1210 (11th Cir. 2020). The question on a motion to dismiss is whether the complaint's allegations, accepted as true and construed in the plaintiff's favor, state a plausible claim to relief.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation marks omitted).  But "conclusory allegations, unwarranted

4

deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

We liberally construe the filings of *pro se* parties. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). But we may not serve as *de facto* counsel or rewrite an otherwise deficient pleading to sustain an action. *Id.*

## A.

We begin with the relevant law. To prevail under § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Violations of the Equal Protection Clause are actionable under § 1983. *See, e.g.*, *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015). Among other things, "[t]he Equal Protection Clause ensures a right to be free from intentional discrimination based upon race." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003).

Similarly, Title VI prohibits intentional discrimination based on "race, color, or national origin . . . under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Title VI's protection extends no further than that already afforded under the Equal Protection Clause of the Fourteenth Amendment." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1202 (11th Cir. 1999). So the equal-

protection analysis will generally apply to Title VI claims as well. *See Elston v. Talladega Cty. Bd. of Educ.*, 997 F.2d 1394, 1405 n.11 (11th Cir. 1993) ("Our equal protection discussion should be understood as disposing of plaintiffs' Title VI statutory claims as well.").

When a plaintiff seeks to hold supervisory officials or municipalities liable under § 1983 for the conduct of their subordinates, as Arrington does here, he must establish that the supervisor or municipality caused the constitutional deprivation. *McDowell v. Brown*, 392 F.3d 1283, 1289–90 (11th Cir. 2004) (municipal liability); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442–43 (11th Cir. 1985) (supervisory and municipal liability). To do so, the plaintiff generally must show that the constitutional violation resulted from a "custom" or "policy" of the supervisor or municipality.[1] *Fundiller*, 777 F.2d at 1442; *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). In the absence of an express policy, a supervisor or municipality may be liable if the alleged discriminatory practice was "sufficiently widespread so as to put [the defendants] on notice of the need to act." *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998) (supervisory liability); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) ("[A] longstanding and widespread practice is deemed authorized by the

---

[1] A supervisor may also be liable under § 1983 if he or she was personally involved in the alleged constitutional violation, *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998), but Arrington makes no such claim against the individual defendants here.

policymaking officials"—and is therefore a "custom" for purposes of municipal liability under § 1983—"because they must have known about it but failed to stop it.").

**B.**

Here, the district court properly dismissed Arrington's complaint for failure to state a plausible claim to relief. Accepting Arrington's allegations as true, he has not stated an underlying constitutional or statutory violation. Nor has he shown that any of the named defendants would be liable even if he could establish a constitutional violation.

To begin with, the factual allegations in Arrington's complaint do not plausibly establish that he was discriminated against because of his race. Arrington repeatedly asserts in conclusory terms that he was subject to race discrimination and that a "racial discriminatory education environment . . . existed in GTB." But these assertions are insufficient because "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt.*, 297 F.3d at 1188. For instance, we need not accept as true Arrington's conclusory assertions that GTB placed him in the wrong course to oust him because of his race or that there was a "racially hostile environment" at GTB.

Rather, Arrington must plead sufficient factual content from which it would be reasonable to infer that his bad experiences at GTB were due to his race. *See*

7

*Cisneros*, 972 F.3d at 1210. But beyond conclusory allegations, Arrington fails to plausibly show that any of the various instances of mistreatment he alleged in the complaint were connected to his race. At best, Arrington suggested that he was treated differently than non-African-American students on two occasions: (1) other non-African-American students used a different textbook than he did when they took the same course "around the same time" as he did; (2) other non-African-American students received their Pell Grant refund checks before he did.

But the first instance is not enough because Arrington did not allege that the other students were classmates, and it's entirely possible that there were multiple classes with different instructors, who used different books, for the same basic course. Without additional information, it is far too speculative to infer that Arrington was given a different, worse coursebook because of his race. As for the Pell Grant refund checks, Arrington's own allegations reflect that the timing of the checks depended on individualized factors such as the number of class hours completed, and we do not have sufficient information about Arrington or the other students for it to be plausible to conclude that the delay Arrington experienced was due to his race rather than some other factor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").

Apart from these two instances, there is nothing in the complaint to indicate that the mistreatment Arrington experienced was due to his race or that there was a "racially hostile" environment at GTB. Accordingly, Arrington failed to state a plausible claim of race discrimination under either the Equal Protection Clause or Title VI.[2] *See Elston*, 997 F.2d at 1405 n.11 (explaining that the same analysis applies to both claims).

Nor has Arrington established a basis for supervisory or municipal liability under § 1983. Arrington did not allege that he was mistreated because of an official policy of the School District or GTB, and his allegations do not show the existence of a widespread "custom" of mistreatment similar to that which he experienced. *See Fundiller*, 777 F.2d at 1442; *Keith*, 749 F.3d at 1047–48. The various and seemingly unconnected instances of harassment Arrington experienced were not "sufficiently widespread so as to put [the defendants] on notice of the need to act." *Braddy*, 133 F.3d at 802; *see Brown*, 923 F.2d at 1481. Accordingly, there is no basis to impose § 1983 liability on the individual defendants or the School District for the allegedly unconstitutional actions of their subordinates.

---

[2] Arrington arguably raised a "class of one" equal-protection claim, which involves "a plaintiff who alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quotation marks omitted). But his allegations fail to show that he was treated differently from others "similarly situated" in all material respects or that any differential treatment lacked a rational basis. *See id.*

For these reasons, we affirm the judgment dismissing Arrington's lawsuit with prejudice.

**AFFIRMED.**