**Gavin Shawn BROWN, Plaintiff–Appellant,**

v.

**CITY OF HIALEAH, et al., Defendants–Appellees.**

No. 93–4261.

United States Court of Appeals, Eleventh Circuit.

Sept. 8, 1994.

Bret Clark, Miami, FL, for appellant.

Anthony Di Matteo, Gaebe, Murphy, Mullen & Antonelli, West Palm Beach, FL, for appellees.

Before HATCHETT and EDMONDSON, Circuit Judges, and MELTON *, Senior District Judge.

---

* Honorable Howell W. Melton, Senior U.S. District Judge from the Middle District of Florida, sitting by designation.

HATCHETT, Circuit Judge:

In this excessive force case, we reverse and remand for a new trial.

## FACTS

In July, 1984, city of Hialeah, Florida, police officers executed a "reverse sting" operation wherein police officer Guillermo Mugarra, posing as a drug dealer, arranged to sell cocaine to the appellant, Gavin Shawn Brown. Brown and Mario Troncoso, Brown's accomplice, met with officer Mugarra and Alvaro Marin, an undercover informant for the city of Hialeah, at a Holiday Inn, in Hialeah. During the meeting, Brown turned a loaded automatic .45 handgun on Mugarra and Marin in an attempted drug rip-off. Brown ordered his accomplice Troncoso to tie up Marin and Mugarra and threatened to kill them.

Other police officers involved in the undercover investigation heard Brown's threats through a listening device that Officer Mugarra had concealed on his body. Because of the threatening nature of the situation, and the threats against the lives of Mugarra and Marin, Officer Pugliese made the decision to enter the hotel room to subdue Brown. Upon entering the room, the police officers subdued and arrested Brown. A tape recording of Brown's arrest reveals that Officer Mugarra shouted, "Did you get that, nigger?", after which Mugarra can be heard shouting, "Kill him, kill him, kill him, get him, get him, kill him" and then, "Kill that son-of-a-bitch." After these words, another voice can be heard pleading, "No, no, please, please, please," after which the tape is inaudible.[1]

## PROCEDURAL HISTORY

On October 22, 1984, Brown pleaded guilty to the following criminal charges: attempted murder of Officer Pugliese; unlawful possession of a firearm while engaged in a criminal offense; armed robbery; trafficking in cocaine in excess of 400 grams; conspiracy to traffick in cocaine in excess of 400 grams;

---

1. On the tape is a reference to Brown as a "coon." This word was also excluded from jury consideration.

carrying a concealed firearm; and possession, sale, and delivery of a firearm with an altered serial number.

On May 4, 1988, Brown filed this lawsuit against several police officers and the city of Hialeah alleging excessive force during a lawful arrest, pursuant to 42 U.S.C. § 1983. The defendants included the city of Hialeah, the Chief of Hialeah Police Department, Guillermo Mugarra, Carlos De Varona, Alvaro Marin, Mario Leiva, Kenneth Provenzano, Joseph Pugliese, Roger Hernandez, and Ray Fernandez. On May 31, 1988, the district court dismissed the city of Hialeah and the Chief Hialeah Police Department without prejudice. In an amended complaint, Brown again added as a defendant the city of Hialeah. On April 12, 1991, the district court dismissed Guillermo Mugarra, Mario Leiva, and Alvaro Marin.

On the first day of trial, the court heard arguments regarding the appellees' motion to bifurcate the jury trial to separate the excessive force claims against the individual officers from the claims against the city. The district court ruled that the case would proceed on the excessive force claims against the individuals, Pugliese, Fernandez, Hernandez, Provenzano, and De Varona. The district court also ruled that if the jury found in favor of Brown, then the claims against the city would be tried. On the second day of trial, Brown dismissed all claims against Roger Hernandez. At the close of Brown's case, the district court granted a directed verdict in favor of Ray Fernandez. The court denied all of the other appellees' motions for directed verdicts.

At the conclusion of the first phase of trial on the excessive force claim, the jury returned a verdict in favor of all named appellees; however, although Mugarra had been dismissed, the jury found that Mugarra was guilty of violating Brown's civil rights in using excessive force during the arrest. Because the jury found Mugarra had used excessive force during Brown's lawful arrest, the case proceeded to Brown's claims against the city of Hialeah.

On January 19, 1993, immediately prior to reconvening the jury on the claims against the city, the district court dismissed the sec-

tion 1983 action against the city, finding that as a matter of law the city could not be liable based on Brown's proffer of evidence. On February 10, 1993, the district court entered an amended final judgment on behalf of all appellees.

## CONTENTIONS OF THE PARTIES

Brown contends: (1) that the trial court erred in excluding all evidence of racial slurs; (2) that the trial court erred in using his prior plea of guilty in the criminal case to preclude further factual development; (3) that the trial court erroneously allowed a police officer to testify as an expert in voice print analysis; and (4) that the trial court erred in dismissing his claim against the city. The city and its officers contend that the district court properly ruled on all issues.

## ISSUES

Brown presents the following issues on appeal: (1) whether the district court erred in excluding evidence that a police officer uttered racial slurs during his arrest and beating; (2) whether the district court erred in ruling that collateral estoppel prevented him from introducing evidence contrary to his guilty plea in the related criminal proceedings; (3) whether the district court erred when it allowed a police officer to testify as an expert, identifying voices on a tape recording; and (4) whether the district court erred in dismissing his claim against the city of Hialeah.

## DISCUSSION

Racial Slurs

█ Brown contends that the district court erred in excluding evidence of racial slurs the police officers made during his arrest and beating. We will not disturb a district court's evidentiary rulings in the absence of an abuse of discretion. *United States v. Veltmann,* 6 F.3d 1483, 1491 (11th Cir.1993).

In the first phase of the trial, the parties were litigating Brown's claim that the police officers used excessive force in the arrest. Claims that police officers have used exces-

sive force during the course of an arrest are analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene...." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872; *Samples v. City of Atlanta,* 916 F.2d 1548, 1550 (11th Cir.1990).

■ The Ninth Circuit addressed the issue of the reasonableness of police officers' force in the context of a qualified immunity challenge in *Mendoza v. Block,* 27 F.3d 1357 (9th Cir.1994). In *Mendoza,* the district court, acting as trier of fact, considered whether the officers' use of force was objectively reasonable. In assessing this claim, the district court considered evidence that the officers used offensive language (in this case profanity) along with the other circumstances surrounding the arrest. *Mendoza,* 27 F.3d at 1362. The Ninth Circuit upheld the district court's conclusion that the officers use of offensive language was not unreasonable and did not amount to force. Nevertheless, the court considered the offensive language in determining whether the officers' use of force was objectively reasonable. To the same effect is *East v. City of Chicago,* 719 F.Supp. 683 (N.D.Ill.1989).

Although no Eleventh Circuit case is directly on point, we accept that sometimes words spoken while actions are being taken can be useful to one seeking to determine from all the circumstances the reasonableness of the actions.

In focusing on the totality of circumstances confronting officials at the time of an arrest, the facts and circumstances surrounding the arrest include the full atmosphere at the time. In this case, the fact that a police officer yelled racial epithets while urging fellow officers to "kill" the arrestee is one such circumstance that a jury should be allowed to consider in assessing the objective reasonableness of the officers' force, as the district court did in *Mendoza.*

It is difficult to understand why the district court believed that all of the words uttered in the room at the time of the arrest and beating were probative and helpful to the task the jury faced, except the phrase containing the word "nigger." Could the district court have believed that this word was so prejudicial to the officer's and the city's case that the jury would return a verdict for Brown had they heard the word? We think not. What could have been more prejudicial to the city and the officer's case than the repeated utterances "kill him, kill him, kill him"? We can think of no explanation for the district court's decision to allow into evidence a portion of the utterances at the time of arrest and to exclude other portions.

Because the district court did not state for the record any reason for excluding this evidence, and neither the parties nor this court can discern any reason for its exclusion, we hold that the district court abused its discretion.[2] Accordingly, the district court erred

---

**2.** Although the district court talks about excluding the racial epithet, it never clearly states a reason for its ruling. The following excerpts are examples of the district court's rambling remarks: "[Y]ou just talked about them using racial epithets, I don't think that in and of itself always indicates a racial bias." Later in the discussions: "I am going to tell the jury and allow the plaintiffs to offer so much on the tape that shows Detective Mugarra stating or yelling 'Kill him, kill him.' I will not allow the racial epithets to come in at this point."

* ⊦ * * * *

THE COURT: Well, then we'll wait until the end of the plaintiff's claim, the plaintiff's case, and I will listen to a motion by the defendant at that time.

MR. CLARK: But, Your Honor, I can't prove the claim if I am not allowed to introduce evidence of race discrimination.

THE COURT: Well, you are absolutely right, but I haven't decided that I will keep it out at this point.

.

in excluding from jury consideration testimony of the racial slurs uttered during the course of Brown's arrest.

## Collateral Estoppel

 Brown also contends that the trial court erred in ruling that the doctrine of collateral estoppel prevented him from introducing evidence contrary to his guilty plea. Federal courts considering whether to give preclusive effect to state court judgments must apply the State's law of collateral estoppel under the Full Faith and Credit Clause of the United States Constitution. U.S. Const. art. IV, § 1. Collateral estoppel rules fully apply to civil rights actions arising under 42 U.S.C. § 1983. *Vazquez v. Metropolitan Dade County*, 968 F.2d 1101, 1106 (11th Cir. 1992); *Allen v. McCurry*, 449 U.S. 90, 103–05, 101 S.Ct. 411, 419–21, 66 L.Ed.2d 308 (1980). Thus, we review the question of issue preclusion based upon a prior criminal conviction using the law of the state of Florida.

 The Florida Supreme Court has long held that in civil actions, the trial court may properly admit testimony that the civil plaintiff pleaded guilty in a criminal case as an admission against interest. *Boshnack v. World Wide Rent–A–Car, Inc.*, 195 So.2d 216, 219 (Fla.1967); *Talikka v. Jarvinen*, 354 So.2d 427 (Fla. 4th D.C.A.1978); *Metropolitan Dade County v. Wilkey*, 414 So.2d 269, 271 (Fla. 3d D.C.A.1982). Recently, the Florida Supreme Court specifically authorized the use of defensive collateral estoppel in *Zeidwig v. Ward*, 548 So.2d 209, 214 (Fla. 1989). In approving the use of defensive collateral estoppel in the criminal-to-civil context, the *Zeidwig* court held that a criminal defendant, as a plaintiff, is prohibited from relitigating the same issue that was litigated in prior criminal proceedings. *Zeidwig*, 548 So.2d at 209. With regard to guilty pleas, the Florida appellate courts have held that "where a judgment of conviction is based upon a guilty plea ... a defendant is estopped from denying his guilt of the subject offense in a subsequent civil action." *Kelly v. Department of Health & Rehabilitative*

*Services*, 610 So.2d 1375, 1377 (Fla. 2d D.C.A.1992); *Paterno v. Fernandez*, 569 So.2d 1349, 1350 (Fla. 3d D.C.A.1990).

In this case, Brown sought to introduce evidence that he did not attempt to shoot Officer Pugliese. The introduction of this evidence would have been contrary to Brown's guilty plea, which included attempted murder of Officer Pugliese. The facts surrounding the issue of whether Brown attempted to shoot Officer Pugliese were necessarily decided when Brown pleaded guilty to the attempted murder charge. During the plea colloquy, Brown specifically admitted that he attempted to murder Officer Pugliese through use of a firearm. Accordingly, the district court did not err in ruling that under Florida law, collateral estoppel prevented Brown from introducing and arguing facts inconsistent with his guilty plea.[3]

## Voice Identification

 Brown argues that the trial court erred in allowing Officer Pugliese to testify as an expert to the contents of the audio tape of the struggle. Federal Rule of Evidence 901(b)(5) allows the admission of opinion testimony based on the witness's familiarity with the voice. Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification. *United States v. Cuesta*, 597 F.2d 903 (5th Cir.) *cert. denied*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). A review of the record reveals that the trial court allowed Officer Pugliese to identify voices he recognized based upon his familiarity with the voice of the speaker. The trial court did not abuse its discretion in allowing this testimony.

## Claims Against the City

 Brown's final point on appeal is that the trial court erred in dismissing his section 1983 claim against the city on the ground that he failed to present any competent evidence. We review a district court's dismissal of claims as a matter of law *de novo*. *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 993 (11th Cir.1993).

---

**3.** Brown argues that his guilty plea resulted from ineffective assistance of counsel. This issue is in

another appeal, not before this panel.

Once the jury returned its verdict indicating that Officer Mugarra had used excessive force against Brown, the district court allowed Brown to proffer evidence against the city. A plaintiff seeking to impose liability on a municipality for injuries its employees or agents have inflicted must show that the plaintiff suffered injuries inflicted pursuant to an official government policy or custom. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Also, a plaintiff must establish that the city policy, custom, or practice is the moving force behind the unconstitutional acts of its police officers. *Oklahoma City v. Tuttle*, 471 U.S. 808, 820, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1985). Because our ruling on the exclusion of the racial slur will necessitate a new trial, we do not further address this issue.

Because we find that the district court erred in refusing to allow testimony of the officer's racial slur, we REVERSE the district court and REMAND the case for a new trial.

REVERSED and REMANDED for a new trial.