[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12461
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-61156-JEM

JOSE CORTES,

Plaintiff-Appellee,

versus

BROWARD COUNTY, FLORIDA,
a subdivision of the State of Florida, et al.,

Defendants,

ANTONE BRADLEY,
a Broward County Sheriff's Office Detention Deputy, in his individual capacity,
JEFFREY LEANDRE,
a Broward County Sheriff's Office Detention Deputy, in his individual capacity,
MCMORISS MAGLOIRE,
a Broward County Sheriff's Office Detention Deputy, in his individual capacity,
 SCOTT SMALL,
a Broward County Sheriff's Office Sergeant, in his individual capacity,
GERMAIN MCKENZIE,
a Broward County Sheriff's Office Detention Deputy, in his individual capacity,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 18, 2018)

Before MARCUS, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

PER CURIAM:

Officers Antone Bradley, Jeffrey Leandre, McMoriss Magloire, Scott Small, and Germain McKenzie of the Broward County Sheriff's Office appeal the denial of qualified immunity from Jose Cortes's complaint of excessive force, 42 U.S.C. § 1983, and battery under Florida law. Cortes's complaint stems from his placement in a holding cell following his arrest for a drug offense. Cortes alleged that the officers unjustifiably struck and beat him after he insulted a female intake officer. The district court denied the officers' motions for summary judgment. We affirm.

## I. BACKGROUND

On April 29, 2015, officers of the Hollywood Police Department arrested Cortes for possessing cocaine and transported him to the central booking facility operated by the Broward County Sheriff's Office. While Cortes was using the telephone, his call was disconnected suddenly. Cortes became agitated and referred

to a female intake officer as a "b---h." Magloire overheard Cortes's remark and escorted him to a holding cell.

The parties dispute whether the officers used unjustified force against Cortes inside his holding cell. Cortes alleged that, during the span of two to three minutes, he was subjected to punches, kicks, and being sprayed with pepper foam. According to the officers, Cortes struck Bradley, who responded by punching Cortes two or three times, Bradley and Magloire wrestled Cortes to the floor while trying to restrain him with handcuffs, and Leandre sprayed pepper foam on Cortes's face once to subdue him.

A Florida grand jury returned a two-count indictment against Cortes that charged him with possessing cocaine, Fla. Stat. §§ 893.03(2)(a)4, 893.13(6)(a), and "knowingly commit[ting] a battery upon Antone Bradley, . . . [by] actually and intentionally touch[ing] or strik[ing] [him] against his will, . . . [when Cortes] knew that Antone Bradley was a law enforcement officer," *id.* §§ 784.03(1), 784.07(1)(d), 784.07(2)(b). Cortes pleaded nolo contendere to both charges. Cortes received a sentence of 18 months of probation under the supervision of the Department of Corrections.

Cortes later filed a complaint against the officers. He alleged that, "[o]nce inside the holding cell, Magloire, without warning or provocation punched Cortes three (3) times in the face." Cortes also alleged that McKenzie, Leandre, and Small

3

collectively "kicked and punched Cortes," "forcibly slammed [him] into the metal benches and the floor," and "stripped [him] of all of his clothing and pepper-sprayed [him] in . . . his face and genitals." Cortes testified that he never resisted the officers or moved his arms in an aggressive manner, that he sat down on a bench after being punched by Magloire, that he was seated or standing when the other officers began their assault, and that he did not "know what officers" committed each allegedly unlawful act because "they all grabbed him at once and started striking," he was lying on the floor in "the fetal position," and the blood flowing from the wounds on his face impaired his vision.

The officers moved for summary judgment based on qualified immunity. McKenzie argued that Cortes's claims of excessive force and battery failed because he never identified a specific use of force by or injury that the deputy caused and, in the alternative, that he was immune from suit based on the use of reasonable force to secure Cortes in the holding cell. Magloire, Bradley, Leandre, and Small filed a joint motion and argued that, in the light of Cortes's plea to battery, his claims of excessive force and battery against Bradley, Magloire, and Leandre were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and collateral estoppel; that Bradley, Magloire, and Leandre were immune from suit based on their response "to a fast developing and very quick incident"; that Cortes's claims failed for lack of facts identifying the unlawful acts of each officer as required to defeat their

4

defenses of qualified immunity; that Leandre was immune from suit because he acted in reliance on Bradley's initial determination that force was necessary to secure Cortes; and that Cortes's claims against Small failed because he "did not use force according to" his fellow officers.

Cortes argued that a material dispute of fact existed about whether the officers' actions violated his constitutional right to be free from excessive force. Cortes submitted an affidavit that described each officer's participation in the incident. Cortes averred that his "recollection of the events [had] . . . been refreshed" after he "had an opportunity to re-review the surveillance video recordings" and "to review, for the first time, portions of the videotaped depositions from [the] Defendants." Cortes averred that "Bradley was the first law enforcement officer to physically strike [him] inside Holding Cell #1 by punching [him] multiple times in [the] face without provocation." Cortes also stated that he was "grappl[ed], punche[d], and kick[ed]" first by Magloire and later by Bradley, McKenzie, and Small, which was followed by being "sprayed [in his] face and body with pepper foam" by Leandre.

The district court denied the officers' motions for summary judgment. The district court ruled that the officers' "use of force . . . was objectively unreasonable" and violated Cortes's "Fourteenth Amendment right to be free from excessive force." The district court applied the factors in *Kingsley v. Hendrickson*,

5

135 S. Ct. 2466, 2473 (2015), and determined that "the amount of force used was vastly disproportionate to the need for force"; Cortes's injuries were "substantial" and included "multiple abrasions and wounds to the upper chest, arms, . . . knee and lower leg," lacerations on the forehead that required sutures, and "significant bruising and swelling in the eye and cheek area"; Bradley employed "immediate and sudden force" without "attempt[ing] to temper or limit the amount of force . . . [to] address[] the situation"; and, accepting Cortes's version of events, "[t]here [was] no evidence he posed a physical threat to any jailhouse employee . . . [or] actively resisted the defendants' instructions." The district court also determined that the officers "'step[ped] over the line' of constitutionally permissible conduct by using more force than [was] reasonably necessary in [the] existing situation, *Ort v. White*, 813 F.2d 318, 325 (11th Cir. 1987)," when Cortes "was punched and thrown to the floor of a holding cell after making an offensive verbal remark to a jail employee" and, while "lying prone on the floor, was kicked and stomped upon despite lack of resistance or display of any threating [sic] behavior." The district court decided that "[t]he degree of initial force used by Bradley was objectively unreasonable . . . and despite the fact that any (unreasonably) perceived need for that force had completely subsided by the time [Cortes] was secure on the floor of the holding cell, the defendants continued to deploy substantial force against him . . . or they stood by while others continued to apply substantial force."

6

The district court ruled that the "application of collateral estoppel [was] improper" because Cortes's "prior conviction for battery upon Deputy Bradley [did not] necessarily resolve[] the question of whether Deputy Bradley—who was the target of Plaintiff's criminal conduct—used force beyond that reasonably necessary under the circumstances in response to that conduct." The district court also ruled that "[t]he 'fellow-officer rule, [which] allows an arresting officer to rely on information supplied by fellow officers to effectuate an arrest" did not provide "an absolute defense to [Cortes's] failure to intervene claims . . . ." and the deputies who entered the cell after "Bradley's initial use of force" had "an obligation to independently assess the need for the continued[] application of substantial force against a prone, non-resisting pretrial detainee." Because "the officers later entering had an opportunity to observe at least some of the excessive force," the district court determined that "the evidence raise[d] disputed issues of material fact as to whether they had the ability and a realistic opportunity to stop it."

## II. STANDARD OF REVIEW

We review *de novo* the denial of summary judgment based on qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Summary judgment is appropriate when the evidence establishes that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To make that determination, we construe all facts and

draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Lee*, 284 F.3d at 1190.

### III. DISCUSSION

The officers raise several arguments about the denial of their motions based on qualified immunity. McKenzie and Small argue that the district court erred by crediting Cortes's affidavit, which contradicted his earlier statements about the incident. McKenzie and Smalls also argue that their roles in the incident, if any, were minimal and that their fellow officers' use of force was not excessive in the light of their testimonies that Cortes instigated and then perpetuated the use of force. Magloire, Bradley, and Scott argue that Cortes's conviction bars his claims for excessive force and for battery and establishes that their use of force was reasonable. Leandre argues that he is immune from suit because his act of dispensing pepper spray did not constitute the use of excessive force. These arguments fail.

The district court did not err by refusing to disregard Cortes's affidavit. To disregard an affidavit as a sham, the affidavit must "merely contradict[], without explanation, previously given clear testimony." *See Van T. Junkins and Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984). To be sure, Cortes's affidavit contradicted his earlier testimony that he could not identify what unlawful act each officer committed. But Cortes explained that his "recollection of the events [had]

. . . been refreshed" after he "had an opportunity to re-review the surveillance video recordings" and "to review, for the first time, portions of the videotaped depositions from [the] Defendants." "Variations in [Cortes's] testimony and [his] failure of memory . . . create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all," which is an issue for a jury to resolve. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (stating that a district court is prohibited from weighing conflicting evidence or making credibility determinations). And the affidavit did not, as McKenzie argues, "baldly repudiate" Cortes's earlier testimony. Cortes's averment that he was "grappl[ed], punche[d], and kick[ed]" by McKenzie, Bradley, and Small, is not irreconcilable with his testimony that he recognized McKenzie's "face in the mix of everybody that was attacking [him]" and that he could not distinguish the officers' actions because "they all attacked [him] at once" and after he "was taken down, [he] just [saw] different people's feets [sic] and hands flying in hitting [him]."

The district court also did not err by denying McKenzie's motion for summary judgment. A material factual dispute exists about whether McKenzie participated in the use of force against Cortes. Cortes alleged, testified, and averred that McKenzie played a role in the incident. McKenzie denied any involvement in

the incident and insisted that, even if he had participated, the force applied to Cortes constituted a lawful response to his violent resistance. McKenzie argues that Cortes failed to specifically identify what wrongful acts McKenzie committed, but we have "reject[ed] the argument that the force administered by each defendant in [a] collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force," *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002). Viewing the evidence in the light most favorable to Cortes as the nonmovant, *see Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012), the district court correctly determined that McKenzie was not "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

The district court also did not err by denying Small's motion for summary judgment. Small insists that he was, at most, a bystander to the incident, but "[i]t is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983." *Skrtich*, 280 F.3d at 1302 (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441 (11th Cir. 1985)). "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Id.* (quoting *Fundiller*, 777 F.2d at 1442). Based on Cortes's version of events, the officers used force exceeding what was necessary to control Cortes.

10

A reasonable jury could find that Small's involvement, whether direct or passive, violated Cortes's right to be free from the use of excessive force.

Magloire, Bradley, and Scott argue that Cortes is collaterally estopped from asserting a claim of excessive force because of his prior conviction for battery, but we disagree. We review the preclusive effect of a state court judgment based on the rules of collateral estoppel applied by the state. *Brown v. City of Hialeah*, 30 F.3d 1433, 1437 (11th Cir. 1994) (citing U.S. Const. Art. IV, § 1); *accord Stephens v. Degiovanni*, 852 F.3d 1298, 1319 (11th Cir. 2017). Under Florida law, a defendant in a civil proceeding may use collateral estoppel to prevent a plaintiff who previously was convicted by plea in a criminal case from relitigating an issue disposed of in his criminal proceedings, even though the civil defendant was not a party to the criminal case. *Zeidwig v. Ward*, 548 So. 2d 209, 214 (Fla. 1989). The bar applies whether the conviction was by plea of guilty, *Paterno v. Fernandez*, 569 So. 2d 1349 (Fla. Dist. Ct. App. 1990); *Lora v. Dep't of State, Div. of Licensing*, 569 So. 2d 840 (Fla. Dist. Ct. App. 1990), or a plea of nolo contendere, *Starr Tyme, Inc. v. Cohen*, 659 So. 2d 1064, 1068 (Fla. 1995). "However, the defendant is estopped only as to matters that necessarily were decided in favor of the State in the prior proceeding." *Id.*; *accord Vazquez v. Metro. Dade Cty.*, 968 F.2d 1101, 1108 (11th Cir. 1992) ("[I]t is clear that as a matter of Florida law . . . collateral estoppel is not appropriate when an issue forming the basis for a civil

11

suit was not necessarily resolved in a prior criminal proceeding."). Cortes's conviction establishes only that he unlawfully touched or struck Bradley. The officers are not entitled to collateral estoppel because the record of conviction does not answer whether Bradley's conduct was reasonable or whether additional force was warranted against Cortes.

The officers also argue that Cortes's claims are barred by *Heck*, but we again disagree. Under *Heck*, if a judgment in favor of a plaintiff in a civil action "would necessarily imply the invalidity of his conviction or sentence[,] . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. According to the officers, after Cortes punched Bradley once, Bradley punched Cortes two or three times, which was followed by Magloire using force against Cortes and Leandre spraying Cortes with pepper foam. Based on those facts, success on Cortes's claims of excessive force and battery do not necessarily imply the invalidity of his conviction for battering Bradley. *See Dyer v. Lee*, 488 F.3d 876, 882–83 (11th Cir. 2007) (holding that a claim for excessive force was not barred by *Heck* when the alleged force did not occur until after the plaintiff kicked one of the officers, the action that had formed the basis of her conviction for battery on a law enforcement officer).

12

The district court did not err by denying Magloire, Bradley, Scott, and Leandre summary judgment based on qualified immunity. A material factual dispute exists whether the officers used excessive force. Cortes's single strike at Bradley did not necessarily justify the deputy responding with two to three punches or necessitate that the other officers apply additional force to and dispense pepper spray on Cortes. *See Vazquez*, 968 F.2d at 1108 ("The fact that the act to which the police responded was a criminal act does not foreclose the possibility that the officers' response also was illegal."). Cortes testified that he lifted his arms and perhaps flailed about, but he maintained that his actions were intended to repel the officers' blows and could not have been interpreted as acts of aggressiveness. If we accept as true Cortes's statements, which we must at this stage in the proceedings, *see Hoyt*, 672 F.3d at 977, a reasonable jury could find that Bradley, Magloire, Scott, and Leandre gratuitously used force against Cortes in violation of his constitutional rights.

## IV. CONCLUSION

We **AFFIRM** the denial of the officers' motions for summary judgment based on qualified immunity.