RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TONI MITCHELL, Administratrix of the Estate of
D'Juantez Mitchell; COURTNEY JEWELL-MOORE,
Guardian, Mother, and Next Friend of KMM, KCM,
JLM, and JAM, minors,

                        *Plaintiffs-Appellees*,

    v.

STEVE CONRAD,

                            *Defendant*,

BRYAN ARNOLD, individually and in his official
capacity as a Law Enforcement Officer for the
Louisville Metro Police Department,

                       *Defendant-Appellant*.

> No. 25-5405

───────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:20-cv-00530—David Jason Hale, District Judge.

Argued: March 18, 2026

Decided and Filed: May 14, 2026

Before: SUTTON, Chief Judge; GRIFFIN, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Kristie B. Walker, JEFFERSON COUNTY ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellant. Hal D. Friedman, COOPER & FRIEDMAN, PLC, Louisville, Kentucky, for Appellees. **ON BRIEF:** Kristie B. Walker, Richard Elder, Andrew S. Miller, JEFFERSON COUNTY ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellant. Hal D. Friedman, COOPER & FRIEDMAN, PLC, Louisville, Kentucky, Gregory Simms, SIMMS LAW OFFICE, Louisville, Kentucky, for Appellees.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.

Defendant Bryan Arnold, a law enforcement officer, initiated a traffic stop of D'Juantez Mitchell, who was suspected of committing several armed robberies. During the stop, Mitchell drove his car into Arnold and towards a fellow officer. In response, Arnold shot and killed Mitchell. Mitchell's estate and children dispute that Arnold was justified in using deadly force and sued, alleging that Arnold had violated Mitchell's rights under both the United States Constitution and Kentucky law. The district court found that Arnold was entitled to qualified immunity under federal law but not entitled to immunity under Kentucky law after concluding that the record created a genuine dispute whether Arnold acted in good faith. Because the evidence presents no triable issue regarding a bad faith motive on Arnold's part, we reverse.

I.

A.

In April and May of 2019, an armed individual robbed six gas stations throughout the Louisville metropolitan area. In each instance, the perpetrator entered the business, violently brandished a firearm, and demanded cash. Video surveillance from the fifth and sixth robberies captured the perpetrator driving away in a white Kia Spectra with a missing hubcap. The Kia Spectra led the Louisville Metropolitan Police Department (LMPD) to identify D'Juantez Mitchell as a possible suspect in the string of robberies.

On May 15, 2019, officers went looking for Mitchell. Several officers participated in the search, including defendant Bryan Arnold and his partner, Robert Skaggs. Arnold and Skaggs eventually located Mitchell and surveilled him from a distance, observing him drive erratically and speeding. Eventually, the officers decided to stop and arrest Mitchell in their unmarked LMPD vehicle. A nearby porch camera captured the traffic stop and ensuing events.

Arnold and Skaggs pulled up alongside Mitchell.  Arnold turned on his vehicle's police lights, exited the vehicle, and drew his firearm on Mitchell, positioning himself near the driver's side front wheel.  Another officer, Daniel Mason, blocked Mitchell's vehicle from behind and positioned himself near the front passenger headlight with weapon drawn.  Skaggs positioned himself near the driver's side rear door, also with weapon drawn.  The officers repeatedly identified themselves as police, told Mitchell to put his car in park, put his hands up, and not move.  Mitchell did not comply.

A uniformed Jeffersontown police officer, Sarah King, arrived in a marked police vehicle and stopped about two car lengths in front of Mitchell.  King exited her vehicle and approached Mitchell's vehicle, gun drawn.  Arnold then told her to bring her vehicle closer so it would be bumper to bumper with Mitchell's, preventing his flight.  King started to return to her vehicle.  Before she got there, Arnold observed Mitchell look up, place his left hand on the steering wheel, and lower his right hand towards the center console.  Arnold then heard Mitchell's engine rev and the vehicle began to move.  A moment later, Mitchell's vehicle struck Arnold's left thigh, at which point Arnold immediately fired his gun, which was very close to or touching the windshield.  As the vehicle continued forward, Arnold fired several more shots through the driver's window and driver's side passenger window.  The vehicle violently struck King's parked police cruiser.

Arnold had minor bruising on his thigh where Mitchell's vehicle struck him, but he did not require medical treatment at the scene.  King and the other officers had no injuries.  Officers administered aid to Mitchell, but he died from his gunshot wounds.

B.

Mitchell's estate sued Arnold, the LMPD, the former LMPD Chief of Police Steve Conrad, and then-Chief of Police Robert Schroeder, alleging excessive force under 42 U.S.C. § 1983 (Count I), failure to supervise and train under § 1983 (Count II), battery (Count III), wrongful death and loss of love and affection (Count IV), and gross negligence/reckless conduct (Count V).  Arnold moved for summary judgment, asserting qualified immunity on the § 1983

claims, and various state-law immunities—specifically, qualified official immunity, self-defense, and defense of others.

The district court granted Arnold qualified immunity on the § 1983 claims because plaintiffs had failed to demonstrate that Arnold violated clearly established federal law. But the district court denied Arnold any state-law immunity after concluding that a genuine dispute remained regarding whether Arnold acted with subjective good faith. Accordingly, the district court denied summary judgment with respect to plaintiffs' state-law claims. Arnold appealed.

II.

As a preliminary matter, plaintiffs request dismissal under 28 U.S.C. § 1367(c)(3), which allows a district court to decline supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." In their view, no federal claim remains. But plaintiffs are incorrect. Although the district court dismissed the § 1983 claims against Arnold, plaintiffs also brought § 1983 claims against Conrad and Schroeder in their individual and official capacities and against the LMPD. And those claims remain pending in district court. Thus, § 1367(c)(3) is inapplicable.

That said, we have an independent obligation to ensure our jurisdiction over the remaining state-law claims. *In re Flint Water Cases*, 53 F.4th 176, 188 (6th Cir. 2022). In a "federal question action involving pendent state claims, we must look to state immunity law to determine whether a denial of immunity based on state law is appealable." *Browning v. Edmonson County*, 18 F.4th 516, 529 (6th Cir. 2021) (citation modified). Relevant here, "Kentucky permits interlocutory appeal to review a denial of qualified official immunity." *Id.* (citation modified). Thus, we have jurisdiction over this matter, regardless of whether Kentucky permits interlocutory appeal of self-defense immunity under Kentucky Revised Statutes § 503.085 by a public official, which remains an open question. *See Childers v. Albright*, 636 S.W.3d 523, 528 n.3 (Ky. 2021).

III.

We review summary judgment de novo.  *HRT Enters. v. City of Detroit*, 163 F.4th 319, 331 (6th Cir. 2025); *Clemons v. Couch*, 768 F. App'x 432, 439 (6th Cir. 2019).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]

Under Kentucky law, qualified official immunity applies to a public officer or employee performing "(1) discretionary acts or functions, . . . (2) in good faith[,] and (3) within the scope of the employee's authority."  *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citation modified).  The only issues on appeal are whether Arnold's actions were discretionary and in good faith.

A.

Discretionary acts are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.*  Ministerial acts, on the other hand, are those that require "only obedience to the orders of others, . . . when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.*

Plaintiffs argue that Arnold's actions were ministerial.  In support, plaintiffs highlight that the LMPD has standard operating procedures that prohibit shooting at a moving vehicle unless necessary to protect human life.  *See* SOP 9.1.13 (2017).  And, in plaintiffs' view, because Arnold was obligated to follow this rule, his actions were ministerial in nature.  This argument lacks merit.

The LMPD's relevant standard operating procedures at that time reference using deadly force in self-defense and the defense of others:  "Officers shall not shoot from, or at, a moving

---

[1]Arnold insists that the strictures of summary judgment do not constrain us.  Because Kentucky's qualified official immunity is not a jury question, but "manifestly one for the trial court," Arnold contends that the district court should have made factual findings under Federal Rule of Civil Procedure 52. *Sheehy v. Volentine*, 706 S.W.3d 229, 241 (Ky. 2024); *see Dickerson v. Bower*, 723 S.W.3d 799, 806–07 (Ky. Ct. App. 2025).  But here, Arnold moved for summary judgment under Federal Rule of Civil Procedure 56.  The district court resolved the motion on Rule 56.  We discern no error in that.

vehicle, *unless* it is necessary to return gunfire to protect human life and when it does not create an unreasonable risk of harm to innocent persons." SOP 9.1.13 (2017) (emphasis added). Nothing in this provision creates an "absolute, certain, and imperative" duty. *Yanero*, 65 S.W.3d at 522. After all, self-defense situations are "quintessential[ly] discretionary." *Sheehy v. Volentine*, 706 S.W.3d 229, 242 (Ky. 2024); *see also Kirilova v. Braun*, 2022 WL 247751, at *6 (6th Cir. Jan. 27, 2022) ("An officer's use of deadly force plainly falls within the scope of a police officer's authority and is a discretionary act." (citation modified)). Accordingly, we conclude Arnold was performing a discretionary act when he shot Mitchell.

B.

Because Arnold was acting within the scope of his discretionary authority, the burden shifts to plaintiffs to prove "by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523. In most cases, "good faith is just a presumption that exists absent evidence of bad faith." *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006) (citation modified). Thus, to rebut this presumption, plaintiffs bear the burden to present evidence of bad faith. *Id.* They may do this by producing evidence of either objective or subjective bad faith.

Here, only Arnold's subjective belief regarding his use of deadly force is at issue. To show subjective bad faith, and therefore survive summary judgment, plaintiffs had to produce evidence that Arnold "willfully or maliciously intended to harm" Mitchell "or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523. When reviewing this evidence, we "draw justifiable inferences of fact" in plaintiffs' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986) (citation modified); *Bills v. Aseltine*, 958 F.2d 697, 708 (6th Cir. 1992) ("Facts may be established by inference, but the inferences must be reasonable ones," not "merely colorable." (citation modified)). The district court concluded that plaintiffs met their burden. We disagree.

1.

The district court first pointed to some purported inconsistencies in Arnold's testimony regarding what he saw and why he believed deadly force was justified. For example, although Arnold testified that he could only see Mitchell "from waist high," he also testified he saw

Mitchell's "right leg shift from the break to the accelerator." And he testified that "he shot Mitchell because of the threat posed by Mitchell's vehicle," but also claimed he "was justified before [Mitchell] ever stepped on the gas [because] he started reaching for his gun," even though Arnold admitted that he never saw a gun and no gun was recovered.

But even assuming these were inconsistencies, they do not lead to the reasonable inference that Arnold's actions were in bad faith—they offer nothing about whether Arnold behaved without "permissible intentions." *Reich v. City of Elizabethtown*, 945 F.3d 968, 983 (6th Cir. 2019) (citation modified). Thus, no reasonable juror could conclude, based on this evidence, that plaintiffs rebutted the presumption that Arnold acted in good faith.

The district court also relied on eyewitness testimony stating that Mitchell's car began moving only after Arnold fired his first shot. But there is also video evidence to consider, and "when presented with video footage that 'accurately depicts most of the relevant events,' we may utilize that footage to 'ensure [that] the district court properly constructed the factual record' and assessed the legal questions in line with that record." *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 601 (6th Cir. 2025) (quoting *Heeter v. Bowers*, 99 F.4th 900, 910 (6th Cir. 2024)). Looking at the video evidence, we see that before Arnold fired his gun, the rear of Mitchell's vehicle moving forward past a hanging chain (which serves as stationary point of reference in the footage) and the front of the vehicle moving forward past a tree (another stationary point of reference). In short, Mitchell's vehicle moved before Arnold shot him.

To be sure, eyewitnesses testified to the opposite. But they also believed King was out of the way of the vehicle, which the video evidence also contradicts: she remained dangerously in its path once it started to move. And when testimony "is blatantly contradicted by the record, so that no reasonable jury could believe it," that testimony cannot create a genuine dispute of a material fact. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

What the video evidence does corroborate is Arnold's testimony that he shot Mitchell because he feared for his and King's safety, and reasonably so: Mitchell's car moved towards both of them (and actually struck Arnold), even though Mitchell had been ordered to put the vehicle in park, raise his hands, and not move. Based on this evidence, we have no grounds to

question Arnold's subjective belief that deadly force was necessary, which is all that Kentucky law requires. *See Kentucky v. Hasch*, 421 S.W.3d 349, 362 (Ky. 2013) ("[U]se of force is justifiable if [a person] *actually* believes, correctly or incorrectly, that force is necessary to protect himself [or a third person] from an attack from another person."); *see Godawa v. Byrd*, 798 F.3d 457, 464 (6th Cir. 2015) (noting officers are "justified in using deadly force against a driver who objectively appears ready to drive into an officer or bystander with his car" (quoting *Cass v. City of Dayton*, 770 F.3d 368, 375 (6th Cir. 2014)).

In some cases, concluding an official's actions were objectively reasonable and legally justified may not end the inquiry. After all, an official could still have acted with a corrupt or malicious motive; a person may act objectively reasonable yet still do so with impermissible intentions. But here, plaintiffs fail to present evidence from which we may reasonably infer that Arnold's subjective motives were contrary to the objective justification of his actions.

2.

The district court also concluded that affidavits from Arnold's two ex-wives and his daughter created another genuine dispute about Arnold's good faith, as these affidavits suggested that Arnold harbored racial animus towards African Americans. The district court summarized some of these allegations:

> [A]ccording to Arnold's ex-wife Shannon Arnold, Arnold frequently uses racial slurs and has "refuse[d] to go through a drive thru restaurant if there was an African American at the window handing out food." Similarly, according to Arnold's other ex-wife, Melanie Arnold, Arnold uses racial slurs, has referred to Black people as "monkeys" and "gorillas," has stated that "you just can't trust [B]lack people," and has warned his daughter "to be careful" around Black individuals because "they might hurt her." Arnold's daughter, Madaline Arnold, provides further examples of Arnold's bias against Black individuals.

The district court concluded that this evidence demonstrated that Arnold "willfully or maliciously intended to harm" Mitchell based on racial animus.

Arnold contends, however, that this evidence of general racial animus did not show that he acted with subjective ill will in this particular encounter. We agree.

The affidavits come from former wives and a family member who knew Arnold outside the police force. None of the witnesses were present for the incident, nor did any claim direct knowledge of what occurred. They provide no evidence of what Arnold thought the moment he decided to open fire on Mitchell's car. The affidavits do not show that Arnold acts violently towards racial minorities or uses excessive force against suspects. Because none of the witnesses have any knowledge of the incident or discloses a habit of violence in Arnold's police work, the affidavits lack probative value in assessing what caused Arnold to shoot a potentially dangerous suspect. Furthermore, the danger of unfair prejudice substantially outweighs any potential probative value the affidavits could possibly offer. Fed. R. Evid. 403. Given the video evidence that Arnold and King stood in serious danger near Mitchell's car, the affidavits about Arnold's general attitudes do not alone create a genuine factual dispute about whether Arnold acted "willfully or maliciously" in the moment. *Yanero*, 65 S.W.3d at 523.

Plaintiffs, in response, fail to identify any Kentucky case holding that general racial bias satisfies that standard. Plaintiffs instead rely on two out-of-circuit cases to bolster their argument that evidence of Arnold's racial animus in the past proves that he must have been "motivat[ed]" by the same racial animus when using deadly force against Mitchell. But neither case helps.

In *Price v. Kramer*, 200 F.3d 1237 (9th Cir. 2000), officers saw two African American teenagers driving the opposite way, made a U-turn to follow them, pulled in next to them at a gas station, and then parked across the street and waited, after which the officers chased after and pulled over the teenagers. *Id.* at 1241–42. The officers discovered a young Caucasian male in the car, whom they treated much less aggressively after illegally detaining all three and searching the vehicle. *Id.* at 1251. In comparison to Arnold's case, this evidence supported "the inference that the officers had acted on racial bias" *at the time* of the traffic stop, i.e., that they were motivated to do so because of their racial bias. *Id.* at 1250–51. Moreover, at trial, the defendant officers "were the first to elicit testimony regarding the issue of racism," not the plaintiffs. *Id.* at 1250.

*Brown v. City of Hialeah*, 30 F.3d 1433 (11th Cir. 1994), is similarly unavailing. There, an undercover officer was threatened at gunpoint during a sting operation. 30 F.3d at 1434. Once other officers intervened and subdued the threat, the undercover officer shouted, "Did you

get that, n****r?" and urged his fellow officers to kill the assailant.  *Id.*  The plaintiff sought to introduce evidence of the officer's racial slurs, which the district court denied without much explanation.  *Id.* at 1435, 1436 n.2.  The Eleventh Circuit concluded, however, that "testimony of the racial slurs" uttered "*at the time* of the arrest" was relevant.  *Id.* at 1436–37 (emphasis added).  This is because "sometimes words spoken while actions are being taken can be useful to one seeking to determine from all the circumstances the reasonableness of" an officer's actions.  *Id.* at 1436.

In both cases, the evidence shared a close temporal nexus with the challenged actions by the officers.  *Cf. United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) ("Proper background evidence has a causal, temporal or spatial connection with the charged offense.  Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.").  Further, the evidence in *Price* and *Brown* was directly probative of whether racial bias guided the actions taken by officers at the time of the challenged incidents.  *Cf. Williams v. Sandel*, 433 F. App'x 353, 364 (6th Cir. 2011).  By contrast, plaintiffs' evidence here—that Arnold used the "N" word in the past and had refused to go through drive-thrus worked by African Americans—is not tied to anything he said or did during the encounter with Mitchell.

\* \* \*

Plaintiffs bear the burden to overcome the presumption that Arnold acted in good faith when using deadly force against Mitchell.  They failed to do so.  Accordingly, Arnold is entitled to Kentucky qualified official immunity and plaintiffs' state-law claims therefore cannot be sustained against him.

We reverse.